FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 24, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINDA H.,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>Defendant. | No. 2:19-CV-00024-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 13, 14. Attorney Gary R. Penar represents Linda H. (Plaintiff); Special Assistant United States Attorney Jeffrey E. Staples represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **DENIES** Defendant's Motion for Summary

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING PLAINTIFF'S MOTION - 1

Judgment; **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on August 3, 2016. Tr. 89-90. Plaintiff alleged her disability began on March 1, 2015 on her DIB application, Tr. 232, and March 20, 2015 on her SSI application, Tr. 234. In an undated Disability Report, Plaintiff reported that her condition started bothering her on July 15, 2015. Tr. 269. In October of 2015, Social Security contacted Plaintiff and modified her onset date to July 15, 2015.[2] Tr. 286. At application, Plaintiff stated that the following physical and mental conditions limited her ability to work: bipolar, anxiety, and dependent personality disorder. Tr. 269. Both applications were denied initially and upon reconsideration. Tr. 151-54, 161-74. Administrative Law Judge (ALJ) Mark Kim held a hearing on January 10, 2018 and heard testimony from Plaintiff, medical expert Stephen Rubin, Ph.D., and vocational expert Joseph Moisan. Tr. 34-88. The ALJ issued an unfavorable decision on March 13, 2018. Tr. 15-28. The Appeals Council denied review on November 21, 2018. Tr. 1-5. The ALJ's March 13, 2018 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on January 16, 2019. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 48 years old at the July 15, 2015 alleged date of onset. Tr. 232.

---

[2]Plaintiff does not challenge the onset date portion of the ALJ's decision.

Plaintiff completed college in 1989 and had a teaching certificate at the time of her hearing. Tr. 38-39, 270. Her reported work history includes the jobs of event security, billing specialist, and substitute teacher. Tr. 270, 293. When applying for benefits Plaintiff reported that she was still working as a substitute teacher. Tr. 269, 276-77. At the hearing, she reported that she stopped substitute teaching in December of 2016 because of her conditions. Tr. 40.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process

for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, she is found "disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 13, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from July 15, 2015 through the date of the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 15, 2015, the alleged date of onset. Tr. 17.

At step two, the ALJ determined that Plaintiff had the following severe impairments: major depressive disorder; generalized anxiety disorder; borderline personality disorder; asthma; and obesity. Tr. 18.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of medium work with the following limitations:

the claimant can never climb ladders or scaffolds. The claimant must avoid all exposure to unprotected heights and avoid frequent exposure to pulmonary irritants. In additional, the claimant can perform simple, routine tasks with occasional changes in work setting. The claimant cannot perform high-paced type work and can tolerate occasional interaction with coworkers and the public.

Tr. 20. The ALJ identified Plaintiff's past relevant work as substitute teacher, tutor, and billing specialist and found that she could not perform this past relevant work. Tr. 26.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of janitor, merchandise marker, and advertising distributor. Tr. 26-27. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from July 15, 2015, through the date of the ALJ's decision. Tr. 27.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh her symptom statements, and (2) failing to properly weight the medical opinions in the record.

**DISCUSSION**

**1. Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were unreliable. ECF No. 13 at 18-21.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*,

903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. Specifically, the ALJ found "the objective medical evidence, the claimant's treatment history, and her activities of daily living do not fully support her allegations about the severity of her symptoms." *Id*.

### A. Objective Medical Evidence

The ALJ's first reason for rejecting Plaintiff's symptom statements, that they were not supported by the objective medical evidence, is not specific, clear and convincing.

Objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects," but it cannot serve as the only reason for rejecting a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ provided two citations to the record to support her determination. Tr. 21-22.

First, the ALJ cited to a June 25, 2015 evaluation in which Plaintiff had appropriate psychomotor activity, good eye contact, cooperative attitude, normal speech, normal thought process and content, full insight, good judgment, and no suicidal ideation. Tr. 21 *citing* Tr. 443. Second, the ALJ cited Plaintiff's consultative examination dated November 19, 2016. Tr. 21-22. In this evaluation, Plaintiff was able to repeat five digits forward and four digits backwards, complete serial sevens with no errors, and follow a three-step command. Tr. 701. However,

when citing to these evaluations, the ALJ failed to state how these normal findings were inconsistent with, or failed to support, Plaintiff's specific symptom statements. The Ninth Circuit has held that "[g]eneral findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. Without the specificity of stating how these normal findings undermined specific portions of Plaintiff's symptom statements, this reason fails to meet the specific, clear and convincing standard.

B.   **Treatment History**

The ALJ's second reason for rejecting Plaintiff's symptom statements, that they were not supported by her treatment history, is not specific, clear and convincing.

The Ninth Circuit has issued caution in relying on reports of improved mental health symptoms as a reason to reject a claimant's testimony. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms."); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her. . ."). The examples an ALJ chooses "must in fact constitute examples of a broader development." *Garrison*, 759 F.3d at 1018.

Here, the ALJ found that "treatment notes state that the claimant's condition markedly improved with medication, although she still had mood variations." Tr. 21. The ALJ then cited to one page of medical evidence which contained a summary of treatment from November 16, 2015 through November 22, 2016. Tr. 736. The page includes one treatment date out of sixteen stating "Markedly improved." *Id*. If the treatment timeline on this page alone is read in context, it

shows Plaintiff seeking treatment in late 2015 with no reported changes except her medication being increased until she spent three days in inpatient stabilization with a suspected diagnosis of bipolar disorder in August of 2016. *Id*. In September of 2016, Plaintiff remained "in mixed state but as greatly improved." *Id*. By October of 2016, she had "Markedly improved," and her medication was adjusted again, and by the next visit in November of 2016 she was still having mood variations. *Id*. Therefore, when this "Marked improved" notation is read in context of the treatment timeline, it does not demonstrate improvement to the point it renders Plaintiff's reported symptom statements unreliable. Therefore, this reason does not meet the specific, clear and convincing standard.

### C. Activities of Daily Living

The ALJ's third reason for rejecting Plaintiff's symptom statements, that they were not supported by her activities of daily living, is not specific, clear and convincing.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

The ALJ found that Plaintiff's "performing her own personal care, vacuuming, cleaning dishes, doing laundry, preparing meals, taking her own medication, shopping for groceries, managing her own money, and attending church" did not support her alleged symptoms. Tr. 21.

The Ninth Circuit has admonished ALJs for rejecting Plaintiff testimony based on the ability to perform routine daily tasks:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Garrison*, 759 F.3d at 1016. Here, the activities the ALJ relies upon in rejecting Plaintiff's testimony are routine activities. The ALJ failed to state how these activities were inconsistent with her reported symptoms or how these activities were transferable to a workplace setting. Therefore, this reason fails to meet the specific, clear and convincing standard.

The ALJ also mentioned that "[r]ecords from July 2017 state the claimant was applying for jobs, which evidences her belief that she could perform some work activity." Tr. 21 *citing* Tr. 885. The medical report the ALJ cites to support his finding is dated July 7, 2017 and states Plaintiff "reported feeling overwhelmed after completing activities of her day, such as running errands, applying for jobs, or grocery shopping, and then needs to take a substantial break to regroup and re-energize." Tr. 885. At the hearing, Plaintiff testified that she had been applying for jobs since November of 2016. Tr. 41. She attempted to work as a supervision facilitator in 2017 by picking up foster kids and bringing them to the office for supervised visitations. *Id*. She stated, "It was only part-time. I was feeling apprehensive about working again, but I wanted to try, and I felt like I would be more successful if I went back part-time and ease into it to see if I would be able to do it full-time." *Id*. She further testified she only held the job for two months. Tr. 41-42. Here, the substantial evidence does not support the notion that Plaintiff felt like she could perform sustained work activity on a regular and continuous basis, which the Social Security Administration defines as "8 hours a day, for 5 days a

week, or an equivalent work schedule." S.S.R. 96-8p. Her report to the medical provider in July of 2017 demonstrated that the activity of applying for jobs wore her out, and her testimony demonstrated that her intent was not to enter the workforce full-time. Therefore, the ALJ's reliance on this activity is not supported by substantial evidence.

In conclusion, the ALJ failed to provide a specific, clear and convincing reason for rejecting Plaintiff's symptom statements. This case is remanded for the ALJ to readdress Plaintiff's symptom statements.

**2.     Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by John Arnold, Ph.D., Stephen Rubin, Ph.D., Morgan Liddell, M.D., and the State Agency Psychologists. ECF No. 13 at 9-18.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is

required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A.    John Arnold, Ph.D.

Dr. Arnold evaluated Plaintiff on March 2, 2017. Tr. 851-55. He rated Plaintiff's overall severity based on the combined impact of all diagnosed mental impairments as severe. Tr. 853. He opined that Plaintiff had a severe limitation in three basic work activities, a marked limitation in three basic work activities, and a moderate limitation in six basic work activities. *Id*.

The ALJ assigned the opinion little weight because (1) the opinion was inconsistent with the record as a whole and (2) Dr. Arnold did not provide objective medical signs to support the significant limitations he opined. Tr. 25. However, the ALJ did not discuss Dr. Arnold's opinion in relation to the record as a whole nor did he discuss Dr. Arnold's lack of explanation for the opinion he provided. Instead, the ALJ based his determination on the finding that Dr. Arnold's opinion of a marked limitation in Plaintiff's ability to understand, remember, and persist in tasks was inconsistent with Dr. Liddell's observation that Plaintiff was able to spell world backwards currently and that Plaintiff demonstrated good persistence in attempting tasks. *Id*. Additionally, the ALJ found Dr. Arnold's opinion that Plaintiff had a severe limitation in the ability to maintain appropriate behavior in the work setting was inconsistent with Dr. Liddell's observation that Plaintiff had good eye contact, was congenial and cooperative, had good adherence to social conventions, and did not demonstrate any abnormal movements. *Id*.

In doing so, the ALJ failed to provide any support for the two reasons he listed. He only cites to the opinion of Dr. Liddell. The Ninth Circuit has found that a contradicting opinion from a treating or examining source can be an "additional specific and legitimate" reason for rejecting an opinion. *Tonapetyan v.*

ORDER GRANTING PLAINTIFF'S MOTION - 11

1 *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).³ Here, it is the only evidence the ALJ
2 relies upon in rejecting the opinion. This is not enough. It makes little sense to say
3 that the contradiction requires the ALJ to provide specific and legitimate reasons to
4 reject an opinion, and then say that the contradiction itself is a specific and
5 legitimate reason. As such, while the consistency of an opinion is a factor to be
6 considered by the ALJ, a contradicting opinion, alone, is not a sufficient reason to
7 discredit an opinion. Therefore, the ALJ's reliance on the differing opinions of Dr.
8 Arnold and Dr. Liddell alone are not sufficient to support the rejection of Dr.
9 Arnold's opinion. This case is remanded for additional proceedings to readdress
10 Dr. Arnold's opinion.

> **B.  Remaining Medical Opinions**

Plaintiff also challenged the ALJ's treatment of opinions from Dr. Rubin, Dr. Liddell, and the State Agency Psychologists. ECF No. 13 at 10-18. Considering this case is being remanded to address the above legal errors, the ALJ will also readdress the weight provided to these opinions in the remand proceedings.

**REMEDY**

Plaintiff asks the Court to apply the credit-as-true rule and remand this case for an immediate award of benefits. ECF Nos. 13 at 21.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*,

---

³Defendant cited *Tonapetyan* as holding that the opinion from an examining source is substantial evidence to reject the opinion of a treating source. ECF No. 14 at 5. However, the Court in *Tonapetyan* held that the opinion of an examining medical source constitutes substantial evidence and can "serve as additional specific and legitimate reasons" for rejecting opinions from other providers. 242 F.3d at 1149.

888 F.2d 599, 603 (9th Cir. 1989).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court remands for an award of benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Further proceedings are necessary for the ALJ to properly address Plaintiff's symptom statements and to properly consider all the medical opinions in the record.  Additionally, the ALJ will supplement the record with any outstanding evidence and call a vocational expert to testify at a remand hearing.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED, in part,** and the matter is **REMANDED** for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff**

1 | and the file shall be **CLOSED**.

2 | DATED February 24, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION - 14